## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIBERTY INSURANCE UNDERWRITERS INC., | Civil Action No. _____ |
| Plaintiff, | |
| - against - | **JURY TRIAL DEMANDED** |
| THE PLAZA CONDOMINIUM, THE BOARD OF MANAGERS OF THE PLAZA CONDOMINIUM, and JOHN DOE NOS. 1-50, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Liberty Insurance Underwriters Inc. ("Liberty"), by and through its attorneys, Kaufman Dolowich & Voluck, LLP, hereby files this Complaint for Declaratory Judgment and other relief, and, in support thereof, based upon documents reviewed and upon information and belief, alleges as follows:

## NATURE OF THIS CASE

1.     This is an action seeking declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 and for other relief relating to an actual controversy involving Community Association Executive Advantage Policy No. CAP024192-0115 (the "Policy") issued to the Defendant, "Plaza Condominium."

2.     By this action, Liberty seeks rescission of the Policy as a result of omissions and misstatements of material facts made at the time the Plaza Condominium procured the Policy. Liberty learned the truth of the misstatements and omissions after issuing the Policy, including that (a) the Plaza Condominium misrepresented the number and types of units in the

condominium project at issue and (b) the Plaza Condominium and its Board of Managers had knowledge or information of circumstances that could give rise to a Claim potentially falling within the scope of the proposed insurance. Had Liberty known these true facts, Liberty would not have issued the Policy or Liberty would have issued an insurance policy on different terms, conditions, limitations, or exclusions. On this basis, and as alleged below in greater detail, Liberty is entitled to a declaration that the Policy is void *ab initio*.

3.      Alternatively, Liberty seeks declarations that the Policy does not provide coverage to the Defendants with respect to a certain lawsuit reported to Liberty because, *inter alia*, that lawsuit does not fall within the coverage of the Policy.

4.      Liberty also seeks a declaration that it is entitled to reimbursement of all payments it made and continues to make in defending that lawsuit.

## PARTIES

5.      Plaintiff Liberty Insurance Underwriters Inc. is an Illinois corporation with its principal place of business in Boston, Massachusetts.

6.      Upon information and belief, Defendant Plaza Condominium is an unincorporated association of the unit owners of the mixed-used condominium building located at 768 Fifth Avenue, New York, NY 10019 and was formed pursuant to a Declaration of Condominium filed and recorded, pursuant to Article 9-B of the Real Property Law, in the New York County Office of the Register of the City of New York on March 13, 2006.

7.      Defendant the Board of Managers of the Plaza Condominium (the "Master Board") is the board of managers of the Plaza Condominium and consists of the duly elected members, with a principal place of business at 768 Fifth Avenue, New York, NY 10019. The Master Board is comprised of seven members. Three members are designated by the Board of

2

Managers of the Residential Section of the Plaza Condominium (the "Residential Board"), three members are designated by the Board of Managers of the Hotel Section of the Plaza Condominium (the "Hotel Board"), and one member is designated by the Accessory Unit Owner.

8.      John Doe No. 1 through 50, inclusive (the "Doe Defendants"), are past or present members of the Master Board or past or present officers of the Plaza Condominium who may be liable to the Residential Board for the claims alleged in the Underlying Action (as defined below).

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1332(a)(1), because there is a complete diversity of citizenship between Liberty and Defendants and because the amount in controversy exceeds the sum of $75,000.

10.     This Court has jurisdiction to decide this matter pursuant 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 as there presently exists a justiciable controversy between the parties.

11.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(a)(1), because each Defendant resides in this District and is otherwise subject to personal jurisdiction in this District.

## BACKGROUND

**A.      The Plaza Condominium's Application and the Issuance of the Policy**

12.     On or around January 20, 2015, the Plaza Condominium applied to Liberty for the Policy, and, in connection therewith, the Plaza Condominium provided Liberty with information relating to the nature, size, scope, and other aspects relevant to the risk of insuring the Plaza Condominium association, including its potential future claim exposures.

13.     As part of the application process, the Plaza Condominium submitted a "Community Association Executive Advantage Application for Community Association Policy"

dated January 20, 2015 (the "Application"), signed by Robert Grotsky of PG Genatt LLC on behalf of the Plaza Condominium. A copy of the Application is attached hereto, and fully incorporated herein, as Exhibit "A." By signing the Application, Robet Grotsky, on behalf of all prospective **Insureds**, declared that "the statements in this **Application** and its attachments are true and accurate."

14.    In relevant part, Item Number 4 of the Application specifically asked for the total number of units in the Plaza Condominium project and the number of commercial units.

15.    The Plaza Condominium responded to Item Number 4 of the Application by informing Liberty there was a total of 181 units and no commercial units.

16.    In relevant part, Item Number 6 of the Application posed the following question: "Does anyone for whom insurance is sought have any knowledge or information of any act, error, omission, fact, or circumstance which may give rise to a **Claim** which may fall within the scope of the proposed insurance?"

17.    The Plaza Condominium responded to Item Number 6 of the Application by marking "No."

18.    Immediately below the question in Item Number 6, the Application provided the following language in boldfaced type and all capital letters:

**IT IS UNDERSTOOD AND AGREED THAT IF ANYONE FOR WHOM THIS INSURANCE IS SOUGHT HAS ANY KNOWLEDGE OF ANY SUCH ACT, ERROR, OMISSION, FACT, OR CIRCUMSTANCE, ANY CLAIM EMANATING THEREFROM SHALL BE EXCLUDED FROM COVERAGE UNDER THE PROPOSED INSURANCE.**

19.    The Application also contained the following language: "If a policy is issued, this **Application** and its attachments shall be the basis of such policy and shall be deemed attached to and shall form part of such policy."

20. After a review of and in reliance upon the Application materials, Liberty issued the Policy to the Plaza Condominium. A copy of the Policy is attached hereto, and fully incorporated herein, as Exhibit "B."

**B.     The Truth of the Risk in Insuring the Plaza Condominium**

21. Upon information and believe, the 181 units referenced in the Application only account for the Plaza Condominium project's residential units.

22. Upon information and belief, the Plaza Condominium project also consists of (a) a commercial unit configured as 130 transient hotel guest rooms, (b) 152 individual hotel condominium apartments, (c) another commercial unit containing hotel accessory space, restaurants, banquet and meeting facilities and retail space, and (d) another commercial unit used as a health club and spa center.

23. The Underlying Action (defined below) does not present an exposure involving the 181 residential units disclosed in the application; instead, the Underlying Action involves purported obligations and liabilities in connection with the additional, undisclosed units.

24. Upon information and belief, the Plaza Condominium association and the Master Board were aware, at the time the Plaza Condominium association submitted the Application, of the circumstances giving rise to the Underlying Action (defined below), including sub-metering and other development-related issues.

**C.     Relevant Policy Provisions**

25. Subject to all of its terms, conditions, and exclusions, the Policy issued to the Plaza Condominium association generally provided claims-made coverage for the specified Policy Period subject to an aggregate Limit of Liability of $5,000,000 and further subject to a Retention of $5,000 in the aggregate for each Claim and an "individual retention" of $100.

5

26.     The opening paragraph of the Policy provides that the agreement among the
parties was made "[i]n reliance upon the truthfulness and accuracy of the statements made in the
**Application**."

27.     The Policy's Declarations provide that "[t]his Declarations page, together with the
**Application**, the attached Community Association Policy Form, and all endorsements thereto,
shall constitute the contract between the Insurer and the **Insureds**."

28.     Section 23.1 of the Policy provides, in relevant part, the following:

> "**Application**" means all signed applications, including attachments and materials
> submitted therewith or as a part thereof, or incorporated therein, for this Policy
> and for any policy in an uninterrupted series of policies issued by the Insurer of
> which this Policy is a direct or indirect renewal or replacement. All such
> applications, attachments, and materials are deemed attached to and incorporated
> into this Policy.

29.     Pursuant to Section 6, entitled "Application Representations and Severability,"
the Policy provides the following:

> 6.1     The **Insureds** represent that the statements and representations contained
> in the **Application** are true and shall be deemed material to the acceptance
> of the risk or the hazard assumed by the Insurer under this Policy. This
> Policy is issued in reliance upon the truth of such statements and
> representations.

> 6.2     The **Insureds** agree that if the **Application** contains any material
> statements or representations that are untrue, this Policy shall be void as to
> the **Insured Organization** and any **Insured Person** who knew the facts
> that were not truthfully disclosed, provided that such knowledge shall not
> be imputed to any other **Insured Person**.

30.     Pursuant to Section 1, the Policy's Insuring Agreement provides the following:

> The Insurer shall pay on behalf of the **Insureds** all **Loss** which they shall become
> legally obligated to pay as a result of a **Claim** first made during the **Policy Period**
> or **Discovery Period**, if applicable, against the **Insureds** for a **Wrongful Act**
> which takes place before or during the **Policy Period**.

31.     Section 23.3 of the Policy defines "Claim" to mean the following:

(a)     a written demand for monetary or non-monetary relief against an **Insured**;

(b)     the commencement of a civil or criminal judicial proceeding or arbitration against an **Insured**;

(c)     the commencement of a formal criminal, administrative or regulatory proceeding or investigation against an **Insured**, including any brought before the Equal Employment Opportunity Commission or any similar state, local or territorial governmental agency; or

including any appeal therefrom. A **Claim** will be deemed first made on the date an **Insured** receives a written demand, complaint, indictment, notice of charges, or order of formal investigation.

32.     The Policy's Declarations and Section 23.17 designate the "Policy Period" as being from February 11, 2015 to February 11, 2016.

33.     Pursuant to Section 9.2, the Policy provides the following:

All **Claims** arising from the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed one **Claim** and subject to a single limit of liability. Such **Claim** shall be deemed first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

34.     Section 23.13 of the Policy defines "Interrelated Wrongful Act" to mean "**Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions, or causes."

35.     Pursuant to Section 23.10, the Policy defines "Insured(s)" to mean "Insured Persons," "Insured Organization," and "any **Property Manager**, but only if the **Property Manager** is acting pursuant to the written authority granted by the [Plaza Condominium] or on behalf of the at the directly of the [Plaza Condominium] or any **Subsidiary**."

36.     Pursuant to Section 23.11 and the Declarations, the Policy defines "Insured Organization" to include only the Plaza Condominium and any "Subsidiary."

37.     Section 23.20 of the Policy provides the following:

"**Subsidiary**" means any entity which qualifies as a not-for-profit organization under the Internal Revenue Code and for which the **Parent Organization** has or controls the right to elect or appoint more than fifty percent (50%) of the Board of Directors or other governing body of such entity if such right exists:

(a)     prior to inception date of the **Policy Period**;

(b)     after the inception date of the **Policy Period** and the assets of such entity do not exceed thirty-five percent (35%) of the total consolidated assets of the **Insured Organization** as reflected in the **Parent Organization's** most recent audited consolidated financial statement;

(c)     after the inception date of the **Policy Period** and the assets of such entity exceed thirty-five percent (35%) of the total consolidated assets of the **Insured Organization** as reflected in the **Parent Organization's** most recent audited consolidated financial statement but only upon the condition that the **Parent Organization**:

     (i)     give written notice of such transaction to the Insurer within 90 days after the effective date of such transaction;

     (i[i])   provide the Insurer with such information as the Insurer may require; and

     (ii[i])  pay any additional premium required by the Insurer.

38.     Section 23.12 of the Policy provides the following:

"**Insured Person(s)**" means one or more natural persons who were, now are, or shall hereafter be duly elected or appointed directors, trustees, officers, employees, committee members or volunteers of the Insured Organization, or, with respect to a **Subsidiary** operating outside the United States, their functional equivalent, regardless of title. It also means one or more natural persons who were, now are, or shall hereafter be duly elected or appointed directors, trustees, officers, employees, committee members or volunteers of any **Property Manager**, but only if such persons are acting within the scope of their employment with the **Property Manager** and on behalf of the **Parent Organization** or any **Subsidiary**.

39.     Pursuant to Section 23.24, the Policy defines "Property Manager" as "any entity providing real estate property management services to the **Insured Organization** pursuant to a written contract."

40.     Section 4.5 of the Policy (the "Prior Litigation Exclusion") provides the following

in pertinent part:

> This Policy does not apply to any **Claim** made against any **Insured** . . . based
> upon, arising from, or in any way related to:
>
> (a)     any demand, suit, or other proceeding against any **Insured** which has been
>          made, which existed, or was pending prior to the applicable Prior
>          Litigation Date set forth in Item V of the Declarations; or
>
> (b)     the same or substantially the same facts, circumstances or allegations
>          involved in such demand, suit, or other proceeding[.]

41.     Item V of the Policy's Declarations designates the "Prior Litigation Date" as

February 11, 2012.

42.     Section 4.9(a) of the Policy (the "Profit Exclusion") provides the following in

pertinent part:

> This Policy does not apply to any **Claim** made against any **Insured** . . . based
> upon, arising from, or in any way related to . . . any **Insureds** gaining in fact any
> personal profit, remuneration or advantage to which they were not legally
> entitled; . . . provided, however, this exclusion shall only apply if it is finally
> adjudicated that such conduct in fact occurred.

43.     Section 4.9(b) of the Policy (the "Fraud Exclusion") provides the following in

pertinent part:

> This Policy does not apply to any **Claim** made against any **Insured** . . . based
> upon, arising from, or in any way related to . . . any deliberately dishonest,
> malicious or fraudulent act or omission or any willful violation of law by any
> **Insured**; . . . provided, however, this exclusion shall only apply if it is finally
> adjudicated that such conduct in fact occurred.

44.     Section 4.11 of the Policy (the "Construction Defect Exclusion") provides "[t]his

Policy does not apply to any **Claim** made against any **Insured** . . . based upon, arising from, or

in any way related to any **Construction Defect**." Section 23.23 defines "Construction Defect" to

mean the following:

any actual or alleged defective, faulty or delayed construction or any other matter recognized as a construction defect under applicable common or statutory law, whether or not as a result of:

(a)     faulty or incorrect design or architectural plans;

(b)     improper soil testing;

(c)     inadequate or insufficient protection from subsoil, ground water or earth movement or subsidence;

(d)     the construction, manufacture or assembly of any tangible property;

(e)     the failure to provide construction related goods or services as represented or to pay for such goods or services; or

(f)     the supervision of such activities.

45.     Section 4.12 of the Policy (the "Sponsor Exclusion") provides the following:

This Policy does not apply to any **Claim** made against any **Insured** . . . based upon, arising from, or in any way related to any actual or alleged liability of an **Insured**, in whole or in part, in the capacity as a builder or developer, or in the capacity of a sponsor of the **Organization**, or of an **Insured** affiliated with such a builder, developer or sponsor, and which is related to actual or alleged misconduct on the part of such builder, developer or sponsor, including but not limited to actual or alleged conflict of interest, self-dealing, or disputes concerning conversion, construction or development.

46.     Section 5.2 of the Policy (the "Contractual Liability Exclusion") provides in pertinent part that "[t]he Insurer shall not be liable to pay any **Loss** in connection with any **Claim** . . . for any actual or alleged liability of any **Insured** under any contract or agreement, express or implied, written or oral, except for employment related obligations which would have attached absent such contract or agreement[.]"

47.     Pursuant to Section 23.14, in relevant part, "**Loss** shall not include . . . matters uninsurable pursuant to any applicable law."

**D.**     **The Underlying Action**

48.     On or around December 29, 2015, Liberty received notice of a Summons with Notice filed on December 23, 2015 in the Supreme Court of the State of New York for the County of New York to initiate a lawsuit now captioned *Board of Managers of the Residential Section of the Plaza Condominium v. Kristin Franzese, et al.* (Index No. 654394/2015) (the "Underlying Action"). A copy of the Summons with Notice for the Underlying Action is attached hereto as Exhibit "C."

49.     The Summons with Notice in the Underlying Action was filed by the Residential Board against various defendants, including Kristin Franzese, who is the President of the Master Board.

50.     The Residential Board filed the Complaint in the Underlying Action on or around May 18, 2016 against, among others, the Master Board, the Hotel Board, and Kristin Franzese. A copy of the Complaint in the Underlying Action is attached hereto as Exhibit "D."

51.     On or around August 3, 2016, the Residential Board filed an Amended Complaint in the Underlying Action. A copy of the Amended Complaint for the Underlying Action is attached hereto, and fully incorporated herein, as Exhibit "E."

52.     As alleged in the Amended Complaint, the Underlying Action in part arises out of the "gross, negligent, careless, reckless, wrongful, intentional, unlawful and fraudulent misallocation of utility charges of the residential unit owners" of the Plaza Condominium association.

53.     In the Underlying Action, the Residential Board alleges that the defendants in the Underlying Action "failed and refused to properly design, construct, operate, maintain, activate, install and/or implement the utility metering systems necessary and required under the Offering

11

Plan, Condominium Documents and Purchase Agreements to ensure that the usage and consumption of such utilities were appropriately allocated among the different sections of the Plaza Condominium."

54.     The Residential Board further alleges that the actions of the defendants in the Underlying Action effectively resulted in the unit owners of the Residential Section of the Plaza Condominium subsidizing the utility charges incurred by the Non-Residential Units within the Plaza Condominium.

55.     Upon information and belief, the Residential Board dismissed Kristin Franzese from the Underlying Action without prejudice.

56.     Liberty paid for the defense of Kristin Franzese in the Underlying Action until she was dismissed from the Underlying Action.

57.     Liberty has paid and continues to pay for the defense of the Master Board in the Underlying Action.

## COUNT I – RESCISSION

58.     Liberty repeats and re-alleges paragraphs "1" through "57" as if set forth fully and incorporated herein.

59.     In the course of inducing Liberty to issue the Policy and specifically within the Application prepared on behalf of the Plaza Condominium, the Plaza Condominium association made certain misrepresentations, misstatements and omissions of material facts to Liberty.

60.     In the Application, the Plaza Condominium's misrepresentations, misstatements, and omissions included the representation to Liberty that there were a total of 181 units and no commercial units in the Plaza Condominium project. In fact, this representation was false and misleading in that the 181 units referenced in the Application only account for the Plaza

12

Condominium's residential units when, in fact, the Plaza Condominium project also consists of (a) a commercial unit configured as 130 transient hotel guest rooms, (b) 152 individual hotel condominium apartments, (c) another commercial unit containing hotel accessory space, restaurants, banquet and meeting facilities and retail space, and (d) another commercial unit used as a health club and spa center.

61.     The Underlying Action does not present an exposure involving the 181 residential units disclosed in the Application. Instead, the Underlying Action involves purported obligations and liabilities in connection with the additional, undisclosed units.

62.     These misrepresented, misstated and omitted facts were material to the risk being underwritten and insured by Liberty in the Policy.

63.     In the Application, the Plaza Condominium's misrepresentations, misstatements, and omissions also included the representation to Liberty that nobody for whom insurance was sought had any knowledge or information of any act, error, omission, fact or circumstance which may give rise to a Claim which may fall within the scope of the proposed insurance.

64.     Upon information and belief, at the time the Application was submitted to Liberty, the Plaza Condominium and the Master Board were aware of such circumstances, including certain sub-metering and development-related issues at the Plaza Condominium project.

65.     These misrepresented, misstated and/or omitted facts were material to the risk being underwritten and insured by Liberty in the Policy.

66.     Section 6.1 of the Policy, as more fully set forth above, provides in pertinent part that "[t]he **Insureds** represent that the statements and representations contained in the **Application** are true and shall be deemed material to the acceptance of the risk or the hazard

assumed by the Insurer under this Policy" and that "[t]his Policy is issued in reliance upon the truth of such statements and representations."

67. Liberty issued the Policy to the Plaza Condominium association in reliance on the statements and representations made by the Plaza Condominium in the Application and during the underwriting processes.

68. The opening paragraph of the Policy provides that the agreement is "[i]n reliance upon the truthfulness and accuracy of the statements made in the **Application**."

69. In the Application, the Plaza Condominium and all prospective Insureds declared that "the statements in this **Application** and its attachments are true and accurate."

70. Pursuant to Section 6.2 of the Policy, "[t]he **Insureds** agree that if the **Application** contains any material statements or representations that are untrue, this Policy shall be void as to the **Insured Organization** and any **Insured Person** who knew the facts that were not truthfully disclosed, provided that such knowledge shall not be imputed to any other **Insured Person**."

71. Simultaneously with the filing of this action, Liberty offered to return to the Plaza Condominium the premiums paid for the Policy and, concurrent with the filing of this Complaint, will tender a refund of the Policy's premiums to the Plaza Condominium.

72. Liberty, therefore, is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to rescission of the Policy and to a declaration that the Policy is void *ab initio*.

### COUNT II – DECLARATION OF NO COVERAGE
#### (Claim Not First Made During Policy Period)

73. Liberty repeats and re-alleges paragraphs "1" through "72" as if set forth fully and incorporated herein.

14

74.     Section 1 of the Policy limits any potential coverage only to "a **Claim** first made during the **Policy Period**."

75.     Upon information and belief, a demand or claim for relief was issued to the Plaza Condominium, the Master Board, or a member of the Master Board at some time prior to the Policy Period.

76.     Upon information and belief, such demand arose from or involved the same Wrongful Act or Interrelated Wrongful Acts alleged in the Underlying Action.

77.     Section 9.2 of the Policy provides in pertinent part that "[a]ll **Claims** arising from the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed one **Claim**" and "[s]uch **Claim** shall be deemed first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**."

78.     Upon information and belief, the Policy deems such prior demand and the Underlying Action as one Claim.

79.     Upon information and belief, the Policy therefore also deems the Underlying Action as first made at the same time as the prior demand, which was first made before the Policy Period.

80.     As a result, the Insuring Agreement in Section 1 of the Policy is not implicated, and Liberty has no duty to defend any defendant in the Underlying Action.

81.     Liberty also therefore is not liable to pay any Loss in connection with the Underlying Action.

82.     Liberty accordingly is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to a declaration that there is no coverage under the Policy for the Underlying Action by reason of the Underlying Action being deemed a Claim first made prior to the Policy Period.

## COUNT III – DECLARATION OF NO COVERAGE
### (Prior Litigation Exclusion)

83.    Liberty repeats and re-alleges paragraphs "1" through "82" as if set forth fully and incorporated herein.

84.    The Prior Litigation Exclusion in Section 4.5 of the Policy, as set forth above, provides in pertinent part that "[t]his Policy does not apply to any **Claim** made against any Insured . . . based upon, arising from, or in any way related to: (a) any demand, suit, or other proceeding against any Insured which has been made, which existed, or was pending prior to [February 11, 2012]; or (b) the same or substantially the same facts, circumstances or allegations involved in such demand, suit, or other proceeding[.]"

85.    Upon information and belief, a demand, suit, or other proceeding against the Plaza Condominium, the Master Board, or a member of the Master Board was made, existed, or pending prior to February 11, 2012.

86.    Upon information and belief, the Underlying Action constitutes a Claim based upon, arising from, or in any way related to such prior demand, suit, or other proceeding or to the same or substantially the same facts, circumstances or allegations involved in such demand, suit, or other proceeding.

87.    As a result, Liberty has no duty to defend any Defendant in the Underlying Action.

88.    Liberty also therefore is not liable to pay any Loss in connection with the Underlying Action.

89.    Liberty accordingly is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to a declaration that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Prior Litigation Exclusion in Section 4.5 of the Policy.

## COUNT IV – DECLARATION OF NO COVERAGE
### (Prior Knowledge Exclusion)

90.     Liberty repeats and re-alleges paragraphs "1" through "89" as if set forth fully and incorporated herein.

91.     The Policy's Declarations and Section 23.1 both incorporate the Application into the terms of the Policy.

92.     When answering the question in Item Number 6 of the Application, the Plaza Condominium failed to disclose previously known circumstances that gave rise to the Underlying Action.

93.     Immediately below the question in Item Number 6, the Application provides the following in boldface type and all capital letters, which was incorporated into the terms of the Policy (the "Prior Knowledge Exclusion"):

**IT IS UNDERSTOOD AND AGREED THAT IF ANYONE FOR WHOM THIS INSURANCE IS SOUGHT HAS ANY KNOWLEDGE OF ANY SUCH ACT, ERROR, OMISSION, FACT, OR CIRCUMSTANCE, ANY CLAIM EMANATING THEREFROM SHALL BE EXCLUDED FROM COVERAGE UNDER THE PROPOSED INSURANCE.**

94.     The Plaza Condominium association and its Master Board were previously aware of acts, errors, omissions, facts and/or circumstances giving rise to the Underlying Action, including the sub-metering and development-related issues.

95.     Therefore, the Underlying Action is excluded from coverage under the Policy.

96.     As a result, Liberty has no duty to defend any defendant in the Underlying Action.

97.     Liberty also therefore is not liable to pay any Loss in connection with the Underlying Action.

98.     Liberty accordingly is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to a declaration that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Policy's Prior Knowledge Exclusion.

## COUNT V – DECLARATION OF NO COVERAGE
### (Known Loss / Loss in Progress)

99.     Liberty repeats and re-alleges paragraphs "1" through "98" as if set forth fully and incorporated herein.

100.    Upon information and belief, the Plaza Condominium and the Master Board knew or should have known before the February 11, 2015 effective date of the Policy that a liability loss had occurred or was substantially likely to occur.

101.    As a result, Liberty has no duty to defend any defendant in the Underlying Action.

102.    Liberty also therefore is not liable to pay any Loss in connection with the Underlying Action.

103.    Liberty accordingly is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to a declaration that there is no coverage under the Policy for the Underlying Action by reason of the "known loss" or "loss in progress" doctrines holding that a potential insured may not obtain insurance to cover a loss that is known before the policy takes effect.

## COUNT VI – DECLARATION OF NO COVERAGE
### (Construction Defect Exclusion)

104.    Liberty repeats and re-alleges paragraphs "1" through "103" as if set forth fully and incorporated herein.

105.    The Construction Defect Exclusion in Section 4.11 of the Policy, as forth above, provides in pertinent part that "[t]his Policy does not apply to any **Claim** made against any **Insured** . . . based upon, arising from, or in any way related to any **Construction Defect**."

18

106.    In the Underlying Action, the Residential Board alleges, among other things, that the defendants in the Underlying Action "failed and refused to properly design, construct, operate, maintain, activate, install and/or implement the utility metering systems necessary and required under the Offering Plan, Condominium Documents and Purchase Agreements to ensure that the usage and consumption of such utilities were appropriately allocated among the different sections of the Plaza Condominium."

107.    Thus, the Underlying Action constitutes a Claim based upon, arising from, or related to a Construction Defect.

108.    As a result, Liberty has no duty to defend any defendant in the Underlying Action.

109.    Liberty also therefore is not liable to pay any Loss in connection with the Underlying Action.

110.    Liberty accordingly is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to a declaration that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Construction Defect Exclusion in Section 4.11 of the Policy.

### COUNT VII – DECLARATION OF NO COVERAGE
### (Sponsor Exclusion)

111.    Liberty repeats and re-alleges paragraphs "1" through "110" as if set forth fully and incorporated herein.

112.    The Sponsor Exclusion in Section 4.12 of the Policy, as forth above, provides in pertinent part that "[t]his Policy does not apply to any **Claim** made against any **Insured** . . . based upon, arising from, or in any way related to any actual or alleged liability of an **Insured**, in whole or in part, in the capacity as a builder or developer, or in the capacity of a sponsor of the **Organization**, or of an **Insured** affiliated with such a builder, developer or sponsor, and which is related to actual or alleged misconduct on the part of such builder, developer or sponsor,

including but not limited to actual or alleged conflict of interest, self-dealing, or disputes concerning conversion, construction or development."

113.   In the Underlying Action, the Residential Board alleges, among other things, that the defendants in the Underlying Action "failed and refused to properly design, construct, operate, maintain, activate, install and/or implement the utility metering systems necessary and required under the Offering Plan, Condominium Documents and Purchase Agreements to ensure that the usage and consumption of such utilities were appropriately allocated among the different sections of the Plaza Condominium."

114.   Upon information and belief, one or more of the persons or the entity insured under the Policy acted in a capacity as, or affiliated with, one or more of the project's builders, developers or sponsors during the time that the wrongful conduct at issue in the Underlying Action allegedly took place.

115.   Thus, the Underlying Action constitutes a Claim based upon, arising from, or related to any actual or alleged liability of an Insured, in whole or in part, in the capacity as a builder or developer, or in the capacity of a sponsor of the Organization, or of an Insured affiliated with such a builder, developer or sponsor, and which is related to actual or alleged misconduct on the part of such builder, developer or sponsor, including but not limited to actual or alleged conflict of interest, self-dealing, or disputes concerning conversion, construction or development.

116.   As a result, Liberty has no duty to defend any Defendant in the Underlying Action.

117.   Liberty also therefore is not liable to pay any Loss in connection with the Underlying Action.

118.    Liberty accordingly is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to a declaration that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Sponsor Exclusion in Section 4.12 of the Policy.

## COUNT VIII – DECLARATION OF NO COVERAGE
### (Profit Exclusion)

119.    Liberty repeats and re-alleges paragraphs "1" through "118" as if set forth fully and incorporated herein.

120.    The Profit Exclusion in Section 4.9(a) of the Policy provides in pertinent part that "[t]his Policy does not apply to any **Claim** made against any **Insured** . . . based upon, arising from, or in any way related to . . . any **Insureds** gaining in fact any personal profit, remuneration or advantage to which they were not legally entitled; . . . provided, however, this exclusion shall only apply if it is finally adjudicated that such conduct in fact occurred."

121.    In the Underlying Action, the Residential Board asserts causes of action for, among other things, Conversion, Money Had and Received, Unjust Enrichment, and an Accounting. The Residential Board also alleges, among other things, that the residential unit owners have been overcharged for utility services and defrauded out of tens of millions of dollars in utility charges incurred by the non-residential unit owners and others.

122.    The Residential Board also alleges that the Master Board and other defendants overcharged the residential unit owners as a means of inflating the value of their assets and interests in the Plaza Condominium and benefitted by not having to use their own funds to pay for the expenses and by recouping the increased profits derived from overcharging residential unit owners.

123.    Upon information and belief, the Master Board and/or other Insureds under the Policy have in fact gained personal profit, remuneration, or advantage to which they were not

21

legally entitled, and the Underlying Action is based upon, arises from, or is in any way related to such conduct.

124.    Once it is finally adjudicated in this action, the Underlying Action, or any other proceeding that such conduct in fact occurred, Liberty will have no duty to defend any defendant in the Underlying Action, and Liberty also will not liable to pay any Loss in connection with the Underlying Action.

125.    Liberty accordingly is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to a declaration that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Profit Exclusion in Section 4.9(a) of the Policy.

## COUNT IX – DECLARATION OF NO COVERAGE
### (Fraud Exclusion)

126.    Liberty repeats and re-alleges paragraphs "1" through "125" as if set forth fully and incorporated herein.

127.    The Fraud Exclusion in Section 4.9(b) of the Policy provides in pertinent part that "[t]his Policy does not apply to any **Claim** made against any **Insured** . . . deliberately dishonest, malicious or fraudulent act or omission or any willful violation of law by any **Insured**; . . . provided, however, this exclusion shall only apply if it is finally adjudicated that such conduct in fact occurred."

128.    In the Underlying Action, the Residential Board asserts causes of action for, among other things, Conspiracy to Commit Fraud, Conversion, Fraud, Fraudulent Inducement, Fraudulent Conveyances, and Fraudulent Concealment. The Underlying Action also is replete with allegations of fraudulent and/or deliberately dishonest conduct and/or willful violations of law.

129.     Upon information and belief, the Master Board and/or other Insureds under the Policy have in fact committed deliberately dishonest, malicious, or fraudulent acts or omissions or willful violations of law, and the Underlying Action is based upon, arises from, or is in any way related to such conduct.

130.     Once it is finally adjudicated in this action, the Underlying Action, or any other proceeding that such conduct in fact occurred, Liberty will have no duty to defend any defendant in the Underlying Action, and Liberty also will not liable to pay any Loss in connection with the Underlying Action.

131.     Liberty accordingly is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to a declaration that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Fraud Exclusion in Section 4.9(b) of the Policy.

## COUNT X – DECLARATION OF NO COVERAGE
### (Contractual Liability Exclusion)

132.     Liberty repeats and re-alleges paragraphs "1" through "131" as if set forth fully and incorporated herein.

133.     The Contractual Liability Exclusion in Section 5.2 of the Policy, as forth above, provides in pertinent part that "[t]he Insurer shall not be liable to pay any **Loss** in connection with any **Claim** . . . for any actual or alleged liability of any **Insured** under any contract or agreement, express or implied, written or oral, except for employment related obligations which would have attached absent such contract or agreement[.]"

134.     The Underlying Action concerns alleged requirements and obligations of the Plaza Condominium association and/or the Master Board under various contractual agreements, including the Plaza Condominium's Offering Plan, Condominium Documents, and Purchase Agreements.

135.    Liberty accordingly is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to a declaration that there is no coverage (except for Defense Costs) under the Policy for the Underlying Action by reason of the operation of the Contractual Liability Exclusion in Section 5.2 of the Policy.

## COUNT XI – DECLARATION OF NO COVERAGE
### (Uninsurable Loss)

136.    Liberty repeats and re-alleges paragraphs "1" through "135" as if set forth fully and incorporated herein.

137.    Section 23.14 of the Policy provides in pertinent part that "**Loss** shall not include . . . matters uninsurable pursuant to any applicable law."

138.    Upon information and belief, the relief sought by the Residential Board in the Underlying Action represents a return of overcharges that the Plaza Condominium and/or the Master Board wrongfully obtained or other relief that is uninsurable as a matter of law and/or public policy.

139.    Liberty accordingly is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to a declaration that there is no coverage (except for Defense Costs) under the Policy for the Underlying Action by reason of any loss being uninsurable as a matter of law and/or public policy.

## COUNT XII – DECLARATION THAT LIBERTY IS ENTITLED TO
## REIMBURSEMENT OF COSTS INCURRED TO DEFEND

140.    Liberty repeats and re-alleges paragraphs "1" through "139" as if set forth fully and incorporated herein.

141.    Liberty has and continues to pay for the defense of the Underlying Action, including defending the Master Board and its President, Kristin Franzese.

142.    In view of the various issues discussed above, Liberty does not have any duty to defend the Underlying Action.

143.    To the extent this Court declares the Policy void *ab initio* or declares that Liberty has no duty to defend the Underlying Action, Liberty accordingly is entitled, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, to a declaration that it is entitled to reimbursement of all payments made to defend the Master Condo and Kristin Franzese in the Underlying Action.

### RELIEF REQUESTED

WHEREFORE, Liberty respectfully requests the entry of an Order and a Judgment by this Court:

A.    Declaring that the Plaza Condominium made material misrepresentations in the Application and its underwriting submissions on which Liberty relied in issuing the Policy;

B.    Declaring that the Policy is declared void *ab initio*;

C.    Declaring that there is no coverage under the Policy for the Underlying Action by reason that the Underlying Action constitutes a Claim first made before the Policy Period, including no duty to defend and no liability for Loss;

D.    Declaring that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Prior Litigation Exclusion, including no duty to defend and no liability for Loss;

E.    Declaring that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Prior Knowledge Exclusion, including no duty to defend and no liability for Loss;

F.      Declaring that there is no coverage under the Policy for the Underlying Action by reason of the "known loss" or "loss in progress" doctrines, including no duty to defend and no liability for Loss;

G.      Declaring that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Construction Defect Exclusion, including no duty to defend and no liability for Loss;

H.      Declaring that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Sponsor Exclusion, including no duty to defend and no liability for Loss;

I.      Declaring that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Profit Exclusion, including no duty to defend and no liability for Loss;

J.      Declaring that there is no coverage under the Policy for the Underlying Action by reason of the operation of the Fraud Exclusion, including no duty to defend and no liability for Loss;

K.      Declaring that there is no coverage (except for Defense Costs) under the Policy for the Underlying Action by reason of the operation of the Contractual Liability Exclusion;

L.      Declaring that there is no coverage (except for Defense Costs) under the Policy for the Underlying Action by reason of any loss being uninsurable as a matter of law and/or public policy;

M.      Declaring that Liberty is entitled to reimbursement of all payments made to defend the Master Board and Kristin Franzese in the Underlying Action;

N.      Awarding Liberty its attorneys' fees and costs in this action; and

O.      For such other and further relief as this Court may deem just and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all

issues so triable.

Dated: August 15, 2017

KAUFMAN DOLOWICH & VOLUCK, LLP

*Daniel H. Brody*

Kevin M. Mattessich
  E-mail: kmattessich@kdvlaw.com
Daniel H. Brody
  E-mail: dbrody@kdvlaw.com
40 Exchange Place, 20th Floor
New York, NY  10005
Phone:        (212) 485-9600
Facsimile:    (212) 485-9700

*Attorneys for Plaintiff*
LIBERTY INSURANCE UNDERWRITERS INC.